## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.                      No. CIV 09-0315 LH/LAM
                                CR 06-2263 LH

Oscar Provencio-Sandoval,

      Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    **THIS MATTER** is before the Court on Defendant/Movant (hereinafter "Defendant") Oscar Provencio-Sandoval's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (hereinafter "*Motion*")[2] *(Doc. 1)*, filed on March 30, 2009.  In support of the *Motion*, Defendant also filed *Exhibits to § 2255 Motion* (hereinafter "*Exhibits*") *(Doc. 8)*, on April 20, 2009.  In response to the *Motion*, Plaintiff/Respondent (hereinafter "the Government") filed *Government's Response to Petitioner Provencio-Sandoval's Motion Pursuant to 28 U.S.C. § 2255* (hereinafter "*Response*") *(Doc. 27)*, on June 11, 2009.  Mr. Provencio-Sandoval did not file a reply to the United States' response, and the time for doing so has passed.  On August 31, 2009, Mr. Provencio-Sandoval filed a *Petition for Writ of Mandamus (Doc. 28)*.

---

[1] **Within ten (10) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.**

[2] Unless otherwise noted, all referenced documents are from Case No. CIV-09-0315.

United States District Judge LeRoy Hansen referred the claims raised in the ***Motion*** to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. ***Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, and Immigration Habeas Corpus Proceedings*** *(Doc. 5)*. Having considered the parties' submissions, relevant law, and the record in this case and in Defendant's underlying criminal case contained in Case No. CR-06-2263, the undersigned recommends, for the reasons set forth below, that the claims raised in Defendant's ***Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*** *(Doc. 1)* be **DENIED** and that Case No. CIV-09-0315 be **DISMISSED with prejudice**. The undersigned also recommends that Mr. Provencio-Sandoval's ***Petition for Writ of Mandamus*** *(Doc. 28)* be **DENIED.**

## Factual and Procedural Background

In 1995, in a Texas state court criminal proceeding, Defendant pled guilty to aggravated assault against a public servant (a felony) and driving while intoxicated, second offense (a misdemeanor). *See **Response** (Doc. 27)* at 1; Presentence Report at ¶ 26, from the underlying federal criminal Case No. CR-06-2263. Defendant was sentenced to four years in prison and, following his release in 1999, was deported to Mexico. *See **Response** (Doc. 27)* at 1-2; *see also United States v. Provencio-Sandoval*, No. 07-2119, 272 Fed. Appx. 683, 684, 2008 WL 901182 (10th Cir. April 3, 2008) (unpublished) ("Mr. Provencio-Sandoval was deported in 1999 after being convicted of an aggravated felony.").

In 2006, Defendant was arrested for battery against a household member. ***Response (Doc. 27)*** at 2; Presentence Report at ¶ 5. After conducting a background check, immigration agents learned of Defendant's deportation after his 1995 Texas conviction. ***Response (Doc. 27)*** at 2; Presentence Report at ¶ 6. On October 25, 2006, a federal grand jury returned a one-count

indictment in CR-06-2263 charging Defendant with re-entering the United States illegally, in violation of 8 U.S.C. §§ 1326(a) and 1326(b).[3]  *See **Indictment** (Doc. 11)*, filed in Case No. CR-06-2263.  On January 23, 2007, a jury found Defendant guilty of reentry of a removed alien as charged.  *See **Verdict** (Doc. 32)*, filed in Case No. CR-06-2263.  Prior to his sentencing, Defendant's counsel filed a ***Sentencing Memorandum** (Doc. 41)* in Case No. CR-06-2263, stating that Defendant was concerned about his criminal history as detailed in the Presentence Report. ***Sentencing Memorandum** (Doc. 41)*, filed in Case No. CR-06-2263 at 1.  Specifically, Defendant states in the ***Sentencing Memorandum*** that the Texas State Policeman who was dragged by Defendant, which resulted in the 1995 conviction for aggravated assault, "was not hurt too seriously," and that Defendant was not guilty of the offense but only pled guilty to avoid the possibility of a 25-year sentence for the charges.  *Id.* at 2.  His plea limited his exposure to four years.  *Id.*  Defendant "request[ed] a sentence on the low-range of the advisory guideline range of 57 months."  *Id.*  Significantly, Defendant stated in his ***Sentencing Memorandum*** that he "does not challenge the conviction [for aggravated assault] or the calculation of the appropriate level enhancement."  *Id.* at 1-2.

On April 17, 2007, United States District Judge LeRoy Hansen held a sentencing hearing and both Defendant and his counsel addressed the Court.  *See **Transcript of Sentence Hearing** (Doc. 51)*, filed in Case No. CR-06-2263, at 2-9.  During the hearing, Defendant stated that, while the maximum statutory penalty under 8 U.S.C. § 1326(a) was 24 months of imprisonment, the low end of the advisory guideline range was 57 months of imprisonment, and he did not understand how

---

[3]Subsection 1326(a)(1)-(2) states that "any alien who . . . has been . . . deported . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States . . . shall be . . . imprisoned not more than 2 years." Subsection 1326(b)(2) states that "in the case of any alien described in [subsection (a)] whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be . . . imprisoned not more than 20 years."

his prior aggravated assault conviction could be used to increase his sentence for illegal re-entry. *Id.* at 4-7. Defendant's counsel explained that because Defendant was charged under both 8 U.S.C. § 1326(a) and 1326(b), his previous conviction in a Texas state court for aggravated battery on a police officer provided the basis for Defendant to receive a potential 20-year sentence. *Id.* at 5-6. Defendant's counsel stated that he and Defendant "were on adequate notice ahead of time that the United States intended to seek and introduce evidence of a prior conviction . . . [s]o we're not claiming surprise there." *Id.* at 5. Judge Hansen rejected Defendant's contention that the Court should follow a Ninth Circuit case where the United States was forced to elect whether to proceed under subsection (a) or (b), stating that "the [C]ourt is bound by not only Tenth Circuit law, but by the reasoning and explanation of their decision, and [] the Ninth Circuit has not provided adequate reason for its requirement of making an election." *Id.* at 6. Judge Hansen also rejected Defendant's claim that his aggravated assault conviction was too old to enhance his sentence because it was not so old that it could not be considered under the federal sentencing guidelines. *Id.* at 7. Finally, Judge Hansen rejected Defendant's contention that he was told when he was deported that he could come back to the United States after five years, telling Defendant that "no matter what you were told or who told it to you, that was wrong, and you're being legally prosecuted and sentenced for unlawfully reentering the United States after being deported subsequent to an aggravated felony conviction." *Id.* at 7-8. On April 17, 2007, Judge Hansen sentenced Defendant at the low end of the guideline range to 57 months in prison. *Id.* at 9; *see **Sentencing Minute Sheet** (Doc. 42)*, filed in Case No. CR-06-2263 at 1; and ***Judgment in a Criminal Case** (Doc. 43)*, filed in Case No. CR-06-2263, at 1-2.

On April 23, 2007, Defendant filed a ***Notice of Appeal** (Doc. 45)*, filed in Case No. CR-06-2263, to the Tenth Circuit Court of Appeals, and on April 24, 2007, Defendant's counsel,

James Baiamonte, filed a ***Notice of Appeal*** *(Doc. 44)*, filed in Case No. CR-06-2263, to the Tenth Circuit Court of Appeals. "The sole issue on appeal [was] whether the [D]istrict [C]ourt violated [Defendant's] constitutional right to confront the witnesses against him when it allowed the government to introduce a 'Certificate of Nonexistence of Record' . . . to prove that [Defendant] lacked permission to reenter the United States." *Provencio-Sandoval*, 272 Fed. Appx. at 683. On April 3, 2008, the Tenth Circuit affirmed the District Court's judgment against Defendant and dismissed his appeal. *Id.* at 685. Defendant filed his § 2255 motion on March 30, 2009 (***Motion (Doc. 1)*** at 1), and the United States concedes that his motion was timely filed. *See* ***Response (Doc. 27)*** at 3.[4] The Court reviews his *pro se* pleadings under a liberal standard. *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007). However, the Court may not act as his advocate in this proceeding. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## Discussion

In his ***Motion*** *(Doc. 1)*, Defendant raises four grounds for relief. First, he claims that his counsel in CR-06-2263, Mr. Baiamonte, was ineffective for failing to conduct pretrial investigation regarding his second, third and fourth habeas claims, for failing to preserve those issues for appeal, and for failing to raise them on appeal. *Id.* at 4. Defendant alleges that Mr. Baiamonte told him that he would only investigate those issues if Defendant or his family gave him $10,000 privately. *Id.* Defendant also states that Mr. Baiamonte was ineffective for failing to file a notice of appeal of the judgment in CR-06-2263, for filing a brief in the appeal of CR-06-2263 without consulting

---

[4]A motion under 28 U.S.C. § 2255 is timely if it is filed within one year from the date the conviction becomes final. *See* 28 U.S.C. § 2255(f)(1). The United States Supreme Court has held that, "[f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003). The Tenth Circuit dismissed Defendant's appeal on April 3, 2008, and he had 90 days from that date in which to file a petition for writ of certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13(1). Since Defendant filed his ***Motion*** within one-year of that time, his ***Motion*** is timely.

Defendant, and for abandoning meritorious issues in that appeal.  *Id.*  Second, Defendant claims that his counsel in his 1995 Texas state criminal case, Robert Belk, was ineffective for advising him to plead guilty to aggravated assault for what Defendant claims was "essentially a DUI," and for failing to advise Defendant that he faced deportation for the aggravated assault charge, when he would not face deportation for the DUI.  *Id.* at 5.  Third, Defendant claims that he was illegally convicted of reentry of a removed alien because he is actually a United States citizen and "should not have been deported" (presumably in 1999),  and that if he had not been deported, "illegal re-entry would not have occurred."  *Id.* at 7.  Finally, Defendant claims that his sentence in CR-06-2263 was illegally enhanced because of his 1995 conviction in Texas for aggravated assault, because the aggravated assault "was not a crime of violence, as [Defendant] was oblivious [presumably due to his intoxication] that it even happened."  *Id.* at 8.  As relief, Defendant asks the Court to "find [he] was not deportable and vacate his sentence, or correct the sentence to remove the 16[-]point enhancement."  *Id.* at 12.

### A.  Procedural Default

A petitioner is barred from raising an issue in a § 2255 motion that he failed to raise on direct appeal, "unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed."  *United States v. Bolden*, 472 F.3d 750, 752 (10th Cir. 2006) (internal quotation and citation omitted).  The United States Supreme Court has explained that "the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made," but instead the "cause" standard requires Defendant to "show that some objective factor external to the defense impeded counsel's" ability to raise an issue on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Examples of an "objective factor external

to the defense" that would constitute cause for failing to raise an issue on appeal include "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials made compliance impracticable." *Id.* (internal quotation and citation omitted). Ineffective assistance of counsel is another external factor that may constitute "cause" excusing a procedural default. *Id.* The "fundamental miscarriage of justice" exception applies only in a narrow class of cases involving "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

As described above, Defendant filed a direct appeal of his conviction with the Tenth Circuit Court of Appeals, but he failed to raise in his direct appeal the claims that he was illegally convicted because he is a United States citizen and that his sentence was illegally enhanced because of his 1995 conviction.[5] Defendant fails to make any showing of cause excusing him from failing to raise on appeal the claim that he was illegally convicted because he is a United States citizen. In regard to the claim that his sentence was illegally enhanced, Defendant states in his ***Motion*** that he failed to raise this issue on appeal because he claims that his "[c]ounsel filed [the appeal] brief without consulting [him] and failed to argue the meritorious issue." ***Motion (Doc. 1)*** at 8. To the extent Defendant is claiming his counsel was ineffective for failing to investigate this issue or to raise this issue on appeal, the Court considers the ineffective assistance of counsel claims *infra* at Section B.2.A. *See Massaro*, 538 U.S. at 504. To the extent Defendant is raising this claim on the

---

[5]Because ineffective assistance of counsel claims are an exception to the procedural default rule, the Court will consider *infra* at Sections B.2.A-B Defendant's claims that his counsel in CR-06-2263 was ineffective for failing to conduct pretrial investigation and for failing to preserve and raise issues on appeal, as well as Defendant's claim that his counsel in his 1995 Texas state criminal case was ineffective. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.")

merits, having failed to do so on direct appeal, the Court finds that Defendant fails to show any "objective factor external to the defense" that kept his counsel from raising the issue and, therefore, the claim on its merits is procedurally defaulted. *Murray*, 477 U.S. at 488. The Court, therefore, finds that Defendant is procedurally barred in this action from raising the issues that he was illegally convicted because he is a United States citizen and that his sentence was illegally enhanced, because the issues should have been raised on direct appeal and Defendant has made no showing that the procedural bar should not apply. The Court finds that those issues should be denied.

### B. Ineffective Assistance of Counsel Claims

#### 1. Ineffective Assistance of Counsel in 1995 Texas Criminal Case

Defendant claims that his counsel in his 1995 Texas criminal case was ineffective because he "advised [Defendant] to plead guilty to [a]ggravated [a]ssault without advising [Defendant] that [he] faced deportation for that [charge] when for a DUI [he] did not." ***Motion** (Doc. 1)* at 5. A defendant may not collaterally attack a prior conviction used to enhance a federal sentence if the "prior conviction . . . is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully)." *Daniels v. United States*, 532 U.S. 374, 382 (2001).[6] Here, Defendant presents no argument that his 1995 conviction is still open to direct or collateral attack. *See, e.g.*, 28 U.S.C. § 2255(f) (Defendant had one year from "the date on which his judgment of conviction [became] final" to challenge his 1995 conviction under 28 U.S.C. § 2255). Therefore, the Court finds that Defendant may not collaterally attack his 1995 conviction in this proceeding. Thus, the Court finds that this claim is without merit and should be denied.

---

[6]There are two exceptions to this rule, neither of which apply here.

### 2. Ineffective Assistance of Counsel in 06-CR-2263

Defendant claims that his counsel in CR-06-2263 was ineffective for: (1) failing to conduct pretrial investigation regarding the three grounds for relief raised in his **Motion** *(Doc. 1)* (grounds 2, 3 and 4), and telling Defendant that he would only investigate those claims if Defendant or his family gave him $10,000 privately; (2) failing to preserve and raise those claims on appeal; (3) failing to file a notice of appeal; and (4) filing a brief on appeal without consulting Defendant and abandoning meritorious issues. **Motion** *(Doc. 1)* at 4.

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Defendant must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* To demonstrate unreasonable performance, Defendant must show that his attorney made errors so serious that his performance could not be considered "reasonable[ ] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Defendant must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The Court does not have to address both prongs of the *Strickland* standard if Defendant makes an insufficient showing on one of the prongs. *Id.* at 697.

### a. Pretrial Investigation Regarding Claims 2, 3 and 4 in the Motion

Defendant alleges his counsel was ineffective because he failed to conduct pretrial investigation of Defendant's claims 2, 3 and 4 in the **Motion**, which are that: (1) his counsel in his

1995 Texas state criminal case was ineffective for advising him to plead guilty to aggravated assault; (2) he was illegally convicted of illegal reentry because he is actually a United States citizen; and (3) his sentence in CR-06-2263 was illegally enhanced because his 1995 conviction in Texas for aggravated assault was not a crime of violence.  *Motion (Doc. 1)* at 4, 5, 7 and 8.  In addition, Defendant states that his counsel told him that he would only investigate those claims if Defendant or his family gave him $10,000 privately.  *Id.* at 4.  The Government responds that Defendant's counsel's "performance was not deficient in failing to present these three claims because they were without merit, and the counsel's investigation only needs to progress to the point that their lack of merit was recognized."  *Response (Doc. 27)* at 11.  The Government refutes Defendant's claim that Mr. Baiamonte attempted to solicit $10,000 to conduct further investigation, and Mr. Baiamonte submitted an affidavit wherein he states: "I have never asked a client for additional money and did not ask Mr. Oscar Provencio-Sandoval for $10,000 on this case."  *Id.*; *id. (Doc. 27-2)*, Exhibit 1, ¶12 at 2.

First, Defendant claims his counsel should have investigated whether Defendant's counsel in his 1995 Texas state case was ineffective (*Motion (Doc. 1)* at 4), and states that his 1995 counsel was ineffective because he did not advise Defendant that he faced deportation if he pled guilty to aggravated assault (*see Motion (Doc. 1)* at 5).  As explained *supra* in Section B.1., Defendant cannot collaterally attack his 1995 conviction, and the time for pursuing relief for that conviction has passed.  *See Daniels*, 532 U.S. at 382.  Because Defendant's claim that his 1995 counsel was ineffective could not have been pursued by Mr. Baiamonte in CR-06-2263, the claim is without merit, and Mr. Baiamonte was not objectively unreasonable for failing to investigate it.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that counsel's failure to raise meritless issue in underlying criminal case did not constitute ineffective assistance).  In addition,

Defendant fails to show any prejudice from Mr. Baiamonte's alleged ineffectiveness by failing to explain how the outcome of his proceeding would have been any different if Mr. Baiamonte had pursued this claim.  *See Strickland*, 466 U.S. at 692 ("any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution").  The Court finds that this claim should be denied.

Defendant next claims that his counsel was ineffective for failing to conduct pretrial investigation of whether Defendant was illegally convicted of illegal reentry because he is actually a United States citizen. ***Motion** (Doc. 1)* at 4.  In support of this claim, Defendant states that: (1) his maternal grandmother, Maria Celia Quiroz, was a United States citizen because she was born in the United states (*id.* at 7; ***Exhibits** (Doc. 8-2)* at 4 (Exhibit 16)); (2) his mother, Francisca Sandoval Quiroz was born in Mexico in 1946, but raised in the United States, thereby, according to Defendant, making her a United States citizen (***Motion** (Doc. 1)* at 7;  ***Exhibits** (Doc. 8-2)* at 8 (Exhibit 20)); and (3) Defendant was born in Mexico in 1963[7] and from 1975-1980 he "was placed in the legal and physical custody of [his] grandmother" (***Motion** (Doc. 1)* at 7;  ***Exhibits** (Doc. 8-2)* at 12 (Exhibit 24)).  Defendant provides as exhibits several records to support these claims, including birth certificates, permanent resident cards, social security cards, vital records, and affidavits regarding the residency of members of Defendant's family.  *See **Exhibits** (Doc. 8-2)* at 4-22 (Exhibits 16-31). In response, the Government states that Defendant's claim that he is a United States citizen fails under the applicable derivative citizenship statute (***Response** (Doc. 27)* at 5-7), and Mr. Baiamonte states in his affidavit that "Mr. Oscar Provencio-Sandoval has never been a United States citizen"

---

[7]Defendant states he was born in 1963 (***Motion** (Doc. 1)* at 7), but his birth certificate states he was born in 1964 (***Exhibits** (Doc. 8-2)* at 12 (Exhibit 24)).  Because the Court's analysis is the same whether Defendant was born in 1963 or 1964, the Court finds this discrepancy irrelevant.

(*Response (Doc. 27-2)* at 2 (Exhibit 1)).  In addition, the Government notes that when Defendant addressed the Court at his April 17, 2007, sentencing hearing, he never claimed that he was a United States citizen.  *Id. (Doc. 27)* at 2-3; *see also Transcript of Sentence Hearing (Doc. 51)*, filed in Case No. CR-06-2263, at 2-10.

Pursuant to 8 U.S.C. § 1401(a)(7) (1952), *amended and redesignated as* 8 U.S.C. § 1401(g) (1978 and 1986), which was the version of the statute in place when Defendant was born,[8] for a person who was born outside of the geographical limits of the United States to establish United States citizenship status, he or she must have a parent who is a United States citizen and, prior to the birth of the person seeking derivative citizenship, was physically present in the United States for a period or periods totaling not less than ten years, at least five of which were after the parent was 14 years old.  *See* 8 U.S.C. § 1401(a)(7).[9]  Even if the Court were to assume that Defendant's mother derived United States citizenship from her mother, Defendant's mother was born July 15, 1946 (*Exhibits (Doc. 8-2)* at 8 (Exhibit 20)) and Defendant was either born sometime in 1963 (*Motion (Doc. 1)* at 7), or on January 14, 1964 (*Exhibits (Doc. 8-2)* at 12 (Exhibit 24)), when his mother was either 16 or 17 years old, making it impossible for Defendant's mother to have been physically present in the United States for at least five years after she reached the age of fourteen and prior to Defendant's birth.  Therefore, Defendant cannot establish derivative United States citizenship under 8 U.S.C. § 1401(a)(7) (1952).  Defendant fails to provide any additional support for a claim of

---

[8]*See United States v. Villarreal-Valdez*, No. 03-3115, 85 Fed. Appx. 185, 187-88, 2004 WL 49845 (10th Cir. Jan. 12, 2004) (unpublished) (applying 8 U.S.C. § 1401(a)(7) (1952), which was the version of the statute in effect at the time of the defendant's birth, in deciding whether he had established derivative United States citizenship).

[9]In 1978, 8 U.S.C. §§ 1401(a)(1) to (7) were redesignated as 8 U.S.C. § 1401(g) (Pub. L. No. 95-432 (1978)), and in 1986, the language in 8 U.S.C. § 1401(g) was amended to require the parent to have been physically present in the United States for a period or periods totaling five years, at least two of which were after the parent was 14 years old, instead of requiring physical presence in the United States for at total of ten years, at least five of which after the parent was 14 years old (Pub. L. No. 99-653 (1986)).

derivative United States citizenship under any other sections of 8 U.S.C. § 1401, and, therefore, the Court finds that this claim is without merit and Mr. Baiamonte was not objectively unreasonable for failing to raise it.  *See Fisher*, 38 F.3d at 1147 (holding that counsel's failure to raise meritless issue did not constitute ineffective assistance).

Next, Defendant claims that his counsel was ineffective for failing to pursue his claim that his sentence was illegally enhanced.  ***Motion (Doc. 1)*** at 4.  Defendant states that his "Texas state conviction was used in [his] present federal case to enhance [his] sentence by 16 points for a crime of violence" (*id.* at 5), that his 1995 conviction was "for essentially a DUI" (*id.*), and that his 1995 conviction for aggravated assault was not for a "crime of violence" because Defendant was drunk and "was oblivious that it even happened" (*id.* at 8).  Mr. Baiamonte states in his affidavit that he "never seriously considered that dragging a lawman down the road for almost the equivalent of a football field would be **not** considered to be a violent felony."  ***Response (Doc. 27-2)*** at 2-3 (Exhibit 1) (emphasis in original).  As explained above, Defendant was convicted of illegal reentry under 8 U.S.C. §§ 1326(a) and (b).  Subsection (b)(2) states that a person convicted of reentry "whose removal was subsequent to a conviction for commission of an aggravated felony" shall be imprisoned not more than 20 years.  Under the United States Sentencing Guidelines, unlawful entry into the United States carries a base offense level of eight, with an enhancement of 16 levels for a conviction for a felony that is a "crime of violence."  U.S. Sentencing Guidelines Manual § 2L1.2(a)-(b)(1)(A)(ii) (2008).[10]  A "crime of violence" is defined in the United States Sentencing Guidelines as including "aggravated assault."  *Id.*, commentary 1(B)(iii).  Defendant's 1995 conviction for aggravated assault is by definition a "crime of violence" under the United States

_____

[10]The Court notes that these same guidelines and definitions were in effect on the date of Defendant's sentencing.  *See* 2007 and 2008 Amendments to the U.S. Sentencing Guidelines manual § 2L1.2.

Sentencing Guidelines, and his sentence enhancement was appropriate.  The fact that Defendant chooses to ignore the fact that he also pled guilty to aggravated assault, in addition to the DWI, does not mean that his sentencing judge, or this Court, can ignore this conviction.  The Court, therefore, finds that Mr. Baiamonte's failure to pursue this meritless claim was not objectively unreasonable. *See Fisher*, 38 F.3d at 1147 (holding that counsel's failure to raise meritless issue did not constitute ineffective assistance).

To the extent Defendant is claiming that he should not have been convicted for aggravated assault in 1995 because of his state of mind at the time of the incident, that claim is also without merit.  A federal prisoner can challenge his sentence under 28 U.S.C. § 2255 on the following four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States, [(2)] that the court was without jurisdiction to impose such sentence, [(3)] that the sentence was in excess of the maximum authorized by law, or [(4) that the sentence] is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  In order for a prisoner to show that a sentence is subject to collateral attack, he must show a "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  *Trujillo v. Sullivan*, 815 F.2d 597, 602-03 (10th Cir. 1987) (internal quotation and citation omitted).  Defendant's claim that his sentence was illegally enhanced because he did not have the required state of mind for his 1995 conviction for aggravated assault fails to meet any of these grounds.  The Court, therefore, finds that Mr. Baiamonte's conduct was not objectively unreasonable for failing to pursue this meritless claim.  *See Fisher*, 38 F.3d at 1147 (holding that counsel's failure to raise meritless issue did not constitute ineffective assistance).

In regard to Defendant's claim that his counsel was ineffective by attempting to solicit $10,000 to investigate the claims Defendant is now raising, the Court notes that Defendant provides no support for this claim, and Mr. Baiamonte disputes this allegation in his affidavit. ***Response*** *(Doc. 27-2)* at 2 (Exhibit 1). The Court finds that this allegation, even if true, is insufficient to state a claim because the Court has already found that Defendant's counsel was not ineffective for failing to investigate these claims. *See infra* Section B.2.A; *see also Hall*, 935 F.2d at 1110 (*pro se* litigant must allege "sufficient facts on which a recognized legal claim could be based"). For this reason, the Court recommends that this claim should be denied.

### b. Failure to Preserve and Raise Claims on Appeal

Defendant next claims that his counsel was ineffective for failing to preserve and raise on appeal the claims that his counsel in his 1995 Texas state criminal case was ineffective, that he was illegally convicted of illegal reentry because he is actually a United States citizen, and that his sentence in CR-06-2263 was illegally enhanced. ***Motion*** *(Doc. 1)* at 4. In analyzing an effective assistance of counsel claim based upon the failure to raise an issue on appeal, the Court must consider the merits of the omitted issue. *See Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001). "While counsel should not omit plainly meritorious claims, counsel need not raise meritless issues." *Smith v. Workman*, 550 F.3d 1258, 1268-69 (10th Cir. 2008) (internal quotation and citation omitted) (holding that appellate counsel was not ineffective for failing to raise a meritless claim). As explained above, Defendant's claims that his counsel in his 1995 Texas state criminal case was ineffective, that he was illegally convicted of illegal reentry because he is actually a United States citizen, and that his sentence in CR-06-2263 was illegally enhanced, are without merit. Therefore, the Court finds that Mr. Baiamonte was not ineffective for failing to raise these claims on appeal.

### c.  Failure to File a Notice of Appeal

Next, Defendant alleges that his counsel was ineffective because he failed to file a notice of appeal.  ***Motion (Doc. 1)*** at 4.  The Court finds that this claim is without merit because Defendant's counsel did file a notice of appeal.  On April 23, 2007, Defendant filed a ***Notice of Appeal (Doc. 45)***, filed in Case No. CR-06-2263, to the Tenth Circuit Court of Appeals, and on April 24, 2007, Defendant's counsel filed a ***Notice of Appeal (Doc. 44)***, filed in Case No. CR-06-2263, to the Tenth Circuit Court of Appeals.  Both of these notices of appeal were filed within ten days of April 17, 2007, which is the date of the entry of judgment in CR-06-2263 (***Judgment in a Criminal Case (Doc. 43)***, filed in Case No. CR-06-2263, at 1), and, therefore, both are timely under the Federal Rules of Appellate Procedure (Fed. R. App. P. 4(b)(1)(A)(i)).  Therefore, Court finds that Defendant's claim that his counsel was ineffective for failing to file a notice of appeal is without merit and should be denied.

### d.  Filing a Brief on Appeal Without Consulting Defendant and Abandoning Meritorious Issues

Finally, Defendant claims his counsel was ineffective for failing to consult with Defendant on the issues raised in the appeal and for abandoning meritorious issues.  ***Motion (Doc. 1)*** at 4.  The Court has already found that the issues which Defendant stated his counsel should have raised on appeal are without merit and his counsel was not ineffective for not raising them.  Defendant does not state what other issues he thinks his counsel should have raised on appeal.  Defendant also fails to provide any support for his allegation that his counsel should have consulted with him.  He fails to state what he thinks he should have been consulted about or how that consultation would have affected the outcome of his appeal.  The Court, therefore, finds that this conclusory claim should be

denied.  *See Hall*, 935 F.2d at 1110 (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim).

### Petition for Writ of Mandamus

Defendant filed a ***Petition for Writ of Mandamus (Doc. 28)*** on August 31, 2009, stating only that "[t]he Court has had 150 days to adjudicate my § 2255 Motion."  The writ of mandamus has been abolished in federal district courts. Fed. R. Civ. P. 81(b) ("Relief previously available through [writs of mandamus] may be obtained by appropriate action or motion under these rules.").  To the extent Defendant is seeking mandamus relief on his § 2255 claims, his ***Petition for Writ of Mandamus*** fails because mandamus relief "is not available when review by other means is possible."  *W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993) (citation omitted); *see also York v. Terrell*, No. 09-3011, 2009 WL 2219276 at *1 (10th Cir. July 27, 2009) (unpublished) (holding that mandamus relief is not available for plaintiff's claim because it was being reviewed through the habeas process) (citing *W. Shoshone Bus. Council*, 1 F.3d at 1059).  Furthermore, to the extent Defendant is seeking mandamus relief to compel this court to enter a ruling on his § 2255 claims, his ***Petition for Writ of Mandamus*** is moot by the filing of these proposed findings and recommended disposition.  Moreover, the Court notes that Defendant's ***Motion*** was not ready for ruling by the Court until June 29, 2009, which was the date Defendant's reply to the Government's ***Response*** was due.  The Court, therefore, finds that Defendant's ***Petition for Writ of Mandamus (Doc. 28)*** should be denied.

### Conclusion

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that the claims raised in Mr. Provencio-Sandoval's ***Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct***

***Sentence by a Person in Federal Custody*** *(Doc. 1)* and ***Petition for Writ of Mandamus*** *(Doc. 28)*

be **DENIED**, and that Case No. CIV-09-0315 be **DISMISSED with prejudice**.


*Lourdes A. Martinez*
_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**